# EXHIBIT 1

 CT Corporation

**Service of Process
Transmittal**
10/10/2018
CT Log Number 534202876

TO: Theodore Fikre
Anschutz Entertainment Group, Inc.
800 W Olympic Blvd Ste 305
Los Angeles, CA 90015-1366

RE: **Process Served in Delaware**

FOR: Electric Forest, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ROOTS ROCK RAGE, LLC, etc. and NATHAN RUSSELL, Pltfs. vs. ELECTRIC FOREST, LLC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | SUMMONS, COMPLAINT, EXHIBIT(S) |
| **COURT/AGENCY:** | Cook County - Circuit Court, IL<br>Case # 2018L010829 |
| **NATURE OF ACTION:** | COMPLAINT FOR DEFAMATION AND OTHER CLAIMS |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/10/2018 at 12:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | within 30 days after service of this Summons, not counting the day of service. |
| **ATTORNEY(S) / SENDER(S):** | Richard K. Hellerman<br>The Law Office of Richard K. Hellerman, P.C.<br>222 S. Riverside Plaza, Suite 2100<br>Chicago, IL 60606<br>312-775-3646 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/11/2018, Expected Purge Date: 10/16/2018<br><br>Image SOP<br><br>Email Notification,  Theodore Fikre  tfikre@aegworldwide.com<br><br>Email Notification,  Richard M Jones  rick.jones@tac-denver.com<br><br>Email Notification,  John Keenan  jkeenan@aegworldwide.com<br><br>Email Notification,  Ceci Oertli  Ceci.Oertli@tac-denver.com<br><br>Email Notification,  Chrissy Davie  cdavie@aegworldwide.com<br><br>Email Notification,  Janice Nicols  jnicols@aegworldwide.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**Service of Process Transmittal**

10/10/2018

CT Log Number 534202876

**TO:**     Theodore Fikre
           Anschutz Entertainment Group, Inc.
           800 W Olympic Blvd Ste 305
           Los Angeles, CA 90015-1366

**RE:**     **Process Served in Delaware**

**FOR:**    Electric Forest, LLC  (Domestic State: DE)

**SIGNED:**      The Corporation Trust Company
**ADDRESS:**     1209 N Orange St
                Wilmington, DE 19801-1120
**TELEPHONE:**   302-658-7581

Page 2 of  2 / AS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Return Date: No return date scheduled    2121 - Served
Hearing Date: No hearing scheduled    2221 - Not Served
Courtroom Number: No hearing scheduled    2321 - Served By Mail
Location: No hearing scheduled    2421 - Served By Publication

2121 - Served
2221 - Not Served
2321 - Served By Mail
2420 - Served By Publication    2421 - Served By Publication

**Summons - Alias Summons**

FILED
10/9/2018 11:03 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010829

**FILED DATE: 10/9/2018 11:03 AM   2018L010829**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY, NATHAN RUSSELL,

(Name all parties)

v.

ELECTRIC FOREST, LLC, MADISON HOUSE PRESENTS, LLC, INSOMNIAC HOLDINGS, LLC

No. **2018 L 10829**

Please Serve: The Corporation Trust Company (Registered Agent for Electric Forest, LLC), Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

**⊙ SUMMONS ○ ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ☑ Richard J. Daley Center, 50 W. Washington, Room __Room 801__ , Chicago, Illinois 60602
- ☐ District 2 - Skokie     ☐ District 3 - Rolling Meadows     ☐ District 4 - Maywood
  5600 Old Orchard Rd.     2121 Euclid     1500 Maybrook Dr.
  Skokie, IL 60077     Rolling Meadows, IL 60008     Maywood, IL 60153
- ☐ District 5 - Bridgeview     ☐ District 6 - Markham 16501     ☐ Child Support: 50 W.
  10220 S. 76th Ave.     S. Kedzie Pkwy. Markham,     Washington, LL-01,
  Bridgeview, IL 60455     IL 60428     Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: __57366__

Name: __Richard K. Hellerman__

Atty. for: __Plaintiffs__

Address: __222 S. Riverside Plaza, Suite 2100__

City/State/Zip Code: __Chicago, IL 60606__

Telephone: __312-775-3646__

Primary Email: __rkhellerman@hellermanlaw.com__

Secondary Email:_____

Tertiary Email:_____

Witness:_____

10/9/2018 11:03 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:_____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

**12-Person Jury**

FILED
10/5/2018 2:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010829

FILED DATE: 10/5/2018 2:45 PM 2018L010829

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ROOTS ROCK RAGE, LLC d/b/a<br>SLOTH STEADY, a Michigan limited<br>liability company, and NATHAN RUSSELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| ELECTRIC FOREST, LLC, a Delaware limited<br>liability company, MADISON HOUSE<br>PRESENTS, LLC, a Delaware limited,<br>liability company, and INSOMNIAC<br>HOLDINGS, LLC, a Delaware limited<br>liability company, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DEFAMATION AND OTHER CLAIMS

Plaintiffs, ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY ("Sloth"), a Michigan

limited liability company, and NATHAN RUSSELL ("Mr. Russell"), by their attorneys, The Law

Office of Richard K. Hellerman, P.C., complain against Defendants, ELECTRIC FOREST, LLC

("EF"), MADISON HOUSE PRESENTS, LLC ("Madison House") and INSOMNIAC

HOLDINGS, LLC ("Insomniac"), stating as follows:

### PARTIES

1.      Plaintiff Sloth is a Michigan limited liability company that does business in, among

other places, Cook County, Illinois. Sloth is in the business, inter alia, of manufacturing and selling

collectible pins that are sold both over the internet and at music and performance concerts and

festivals.

2.      Plaintiff Nathan Russell is an individual who is a resident of Chicago, Cook County,

Illinois. Mr. Russell is the sole member and manager of Sloth. Mr. Russell also owns other

FILED DATE: 10/5/2018 2:45 PM   2018L010829

businesses that sell other items, such as sunglasses, over the internet and at music and performance concerts and festivals.

3.      Defendant EF is a Delaware limited liability company that does business in, among other places, Cook County, Illinois. EF is in the business of, *inter alia*, promoting, organizing and sponsoring large scale, multi-day music festivals and concerts.

4.      Defendant Madison House is a Delaware limited liability company that does business in, among other places, Cook County, Illinois. Like EF, Madison House is in the business of, *inter alia*, promoting, organizing and sponsoring large scale, multi-day music festivals and concerts. On information and belief, Madison House owns, in part, and controls EF.

5.      Defendant Insomniac is a Delaware limited liability company that does business in, among other places, Cook County, Illinois. Like EF and Madison House, Insomniac is in the business of, *inter alia*, promoting, organizing and sponsoring large scale, multi-day music festivals and concerts. On information and belief, like Madison House, Insomniac owns, in part, and controls EF.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over all defendants because all defendants regularly conduct business including, but not limited to, promoting, organizing and/or sponsoring concerts in Illinois.

7.      Venue is proper in Cook County because all defendants are nonresidents of Illinois, as all defendants are foreign business entities that are not authorized to transact business in this State. Thus, as nonresidents, venue is proper in any county in Illinois.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

## FACTUAL ALLEGATIONS

8.     Since 2014, Sloth has contracted with EF to be an authorized and licensed seller of pins, including specifically, but not limited to, certain exclusive, official Electric Forest pins, at a music and art festival called "Electric Forest" that has been and, on information and belief, continues to be, promoted, organized and sponsored by EF, Madison House and Insomniac.

9.     Electric Forest is a wildly popular festival, with total attendance of nearly one-hundred thousand of people over two weekends in the early Summer.

10.     Electric Forest is publicized over social media including, but not limited to through texts, Facebook groups and other social media sites.

11.     Among the activities at Electric Forest are concerts by electronic dance music ("EDM") artists, sale of various art pieces in various media by local and national artisans and a lineup of over twenty "Installation Artists" who create large, often interactive sculptures and other interactive visual and tactile experiences. In fact, Electric Forest is widely recognized as a festival where artistic expression in virtually any and every context is encouraged and fostered.

12.     Because of the close-knit artistic community that Electric Forest has promoted, a close and special relationship exists both between the artisans who sell and/or display their artistic works and visions and the attendees at Electric Forest and, as well, between and among the community of artisans themselves. There is a communal atmosphere at Electric Forest that drives the popularity and success of the festival.

13.     Indeed, on its website (www.insomniac.com/events/our-world/electric-forest), Insomniac promotes Electric Forest in precisely this manner, stating, in pertinent part:

> Each summer, just as anticipation for the sold-out Electric Forest reaches fever pitch, tens of thousands of fans – traveling from all parts of the country, and the world, gather at the Double JJ Ranch in Rothbury, Michigan for the music & camping adventure of a lifetime.

3

FILED DATE: 10/5/2018 2:45 PM   2018L010829

Entering its ninth year, Electric Forest is known for bringing together a passionate group of fans whose shared community spirit makes the festival a truly unique experience. The festival incorporates the natural beauty of the venue into carefully crafted art pieces and creatively themed environments, while colorful interactive characters and storylines blend with eclectic performing artists and musicians.

With its astonishing and unparalleled integration of music, art and community, Electric Forest delivers 'The ultimate festival experience.' From the carefully curated musical lineup, to the jaw-dropping Sherwood Forest, to the festival's unprecedented participatory spirit, to the site's incomparable features and amenities – Electric Forest creates a vibe so thick with 'camaraderie and freedom…it must be experienced to be appreciated.'

•    •    •

Known for fully embracing the possibilities of an engaged festival community, Electric Forest's Plug In Program deliberately blurs the line between event organizers and attendees. With this truly unique "open source" fan engagement platform, Electric Forest harnesses the creativity and passion of its community members, offering real and tangible ways for fans to participate in and ultimately help shape the Electric Forest experience. This is a big deal, since for Electric Forest – experience trumps all.

14.    Madison House's website (www.madisonhousepresents.com/events/electric-forest) likewise touts the engagement between artists, performers and attendees: "Internationally renowned for fully embracing the possibilities of an engaged festival community, Electric Forest has been hailed as 'an amazing example of how music and festivals can change one's outlook on life.' (VICE)". Madison House's web page also contains a direct link to the Electric Forest website, www.electricforestfestival.com.

15.    The Electric Forest website (www.electricforestfestival.com) highlights, among other things, the festival's focus on art and creativity, stating: "Art expands the mind and encourages creativity. Some of which you may recognize, many will be entirely new to all eyes."

16.    In addition to the installation art and multi-media art pieces on display at Electric Forest, there is a robust commercial market at Electric Forest where artisans sell their creations.

4

FILED DATE: 10/5/2018 2:45 PM    2018L010829

Lapel pins sales is perhaps the largest segment of this market at Electric Forest, with over 100 artisan/craft vendors on site selling their unique, collectible lapel pins.

17.     Within this booming market at Electric Forest, Sloth has developed a tremendous customer base for the sale of its collectible pins. Since 2014, Sloth has gained notoriety not only for the aesthetics of its collectible pins, but also for its deep involvement, membership and participation in this like-minded, artistic community at Electric Forest (as well as other festivals as well).

18.     While Sloth's Sponsorship Agreement with EF afforded Sloth exclusivity with respect to official, licensed EF collectible pins at Electric Forest, there was no other exclusivity language in Sloth's Sponsorship Agreement with EF.

19.     Although EF and Sloth amended the Sponsorship Agreement from time to time, none of those amendments afforded Sloth any broader or additional exclusivity with respect to official, licensed EF collectible pins, nor did they provide any exclusivity to Sloth with respect to the sale of unofficial, non-licensed collectible pins at Electric Forest. Thus, during the Electric Forest festivals in 2016 and 2017, Sloth was one of numerous collectible pin vendors that were permitted to sell, and did sell, collectible pins at Electric Forest.

20.     In late 2017, EF, Madison House and Insomniac decided that it no longer wanted multiple unofficial, non-licensed collectible pin vendors at Electric Forest in 2018.

21.     Neither EF nor Madison House nor Insomniac consulted with Sloth or Mr. Russell in connection with this decision, nor did EF, Madison House or Insomniac communicate its decision in this regard to Sloth or Mr. Russell at the time they made this decision.

22.     Sloth played no role whatsoever in this decision by EF, Madison House and Insomniac and took no action to influence or otherwise induce EF, Madison House and/or Insomniac to make this decision.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

23.    At the same time they made the decision to limit the number of collectible pin vendors at Electric Forest for 2018, EF, Madison House and Insomniac also unilaterally decided to make Sloth the exclusive vendor for all collectible pins sold at Electric Forest, not just official, licensed Electric Forest pins.

24.    Sloth played no role whatsoever in this decision by EF, Madison House and Insomniac and took no action to influence or otherwise induce EF, Madison House and/or Insomniac to make this decision.

25.    However, on or about December 31, 2017, Judy Heyman, Craft Vending Manager for Electric Forest, wrote and sent a text message to Justin Chamberlain, the owner of Enlighten, one of Sloth's competitors in the collectible pin space. This message stated, in pertinent part:

> Hey, Justin. Thanks for reading the info thoroughly. ***Sloth Steady has confirmed an exclusive agreement for selling pins at Electric Forest. They upgraded their sponsor arrangement to ensure exclusivity. I understand this may affect your sales and/or interest in participating at EF [Electric Forest]***.

The text message went on to offer Enlighten options to scale back the number and size of its locations at Electric Forest or to cancel altogether and receive a full refund before a certain date.

26.    On information and belief, Madison House and Insomniac were aware of and authorized the content of Ms. Heyman's text message to Mr. Chamberlain.

27.    Ms. Heyman sent the same text message about Sloth having confirmed an exclusive agreement for selling pins at Electric Forest and having upgraded its sponsor arrangement to ensure exclusivity to Jon Wilson and his partner Brandy, who are affiliated with (and, on information and belief, own) "Turnip the Beet" which, on information and belief, is another of Sloth's competitors in the sale of collectible pins.

28.    Ms. Heyman's text message about Sloth was entirely false. Sloth had not "confirmed an exclusive agreement for selling pins at Electric Forest." Indeed, Sloth was already

6

FILED DATE: 10/5/2018 2:45 PM   2018L010829

under contract (its 2016 Sponsorship Agreement, as amended) with EF for Electric Forest in 2018, and pursuant to that contract Sloth had no exclusivity with respect to selling unofficial, non-licensed pins at Electric Forest. Furthermore, as of the time Ms. Heyman sent her text message about Sloth as aforesaid, Sloth had not "upgraded their sponsor arrangement to ensure exclusivity" for such unofficial, non-licensed collectible pins at Electric Forest.

29.     In authorizing and/or publishing these false representations about Sloth to Mr. Chamberlain, one of Sloth's many competitors, EF and Madison House knew or, at the very least, it was reasonably foreseeable to EF and Madison, that Mr. Chamberlain would republish the representations to the Electric Forest community of artisans, vendors and attendees.

30.     And, that is precisely what Mr. Chamberlain did. Almost immediately upon his receipt of Ms. Heyman's text message, Mr. Chamberlain published the message on social media, thus disseminating defendants' false statements about Sloth to thousands of people over the internet.

31.     Perhaps thinking it could nip the firestorm in the bud, Madison House, through Darcy Rae Schneider, its Director of Branding, Partnerships and Marketing, wrote an email to Ms. Heyman on January 10, 2018 for distribution to those to whom Ms. Heyman had sent the false text message about Sloth. This email, the subject line of which was "Response to pin issue," plainly admitted the falsity of Ms. Heyman's text message. It stated:

> Judy:
>
> We would like to address a couple issues that seem to have found their way online the past couple days regarding festival pin exclusivity.
>
> 1) The decision to take on an exclusive pin vendor for the Festival was made solely by festival management. This was not directed by any vendor or sponsor.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

2) EF management chose to do this for the following reasons:

    a) We have experienced problems with vendors selling unlicensed festival pins and artist pins, which causes legal issues

    b) We want a generally more diverse marketplace on site.

If there are any other concerns regarding this decision or the miscommunication that was provided previously, please forward them directly to me.

Darcy

32.    Ms. Heyman forwarded Ms. Schneider's email to Mr. Chamberlain by email, stating "Dear Justin, I apologize if I gave the wrong impression regard product exclusivity. Please see email below. Thanks, Judy" A copy of this email, with the attached email from Ms. Schneider to Ms. Heyman, is attached as Exhibit A.

33.    Ms. Heyman sent the identical email, which forwarded Ms. Schneider's email, to Jon Wilson, stating: "Dear Jon and Brandy. I apologize if I gave the wrong impression regard product exclusivity. Please see email below. Thanks, Judy" A copy of this email, with the attached email from Ms. Schneider to Ms. Heyman, is attached as Exhibit B.

34.    Notwithstanding this email, reaction to the false statements about Sloth in Ms. Heyman's text message was swift, pointed and cruel.

35.    Indeed, on January 10, the same date as the email Ms. Schneider wrote and Ms. Heyman forwarded to Mr. Chamberlain and Mr. Wilson, comments about false information Ms. Heyman had previously spread about Sloth already began filling the comments on Facebook. For example, in a comment dated January 10 at 3:59 p.m., someone wrote "WOW. You guys already said you were the official EF pin drops but that wasn't enough? You bought the rights to monopoly [sic] other pin vendors/families . . . so basically not allowing any other people to take part in a free market and make money… And, in response to that comment, others wrote, *inter alia*, "you already

8

FILED DATE: 10/5/2018 2:45 PM    2018L010829

know these fools care about nothing by profit" and "Ya they won't ever see another dime from me. F*ck that jazz. Festivals are about community and love. Their actions go against basic festival principles, heaven forbid someone else tries to seek their art in pin form." and "Go leave them a bad review btw." Another comment from within days of January 10 was "Boycotting y'all because you're pathetic and don't think you can handle competition at electric forest. Worthless pins and you know it. F*cking cowards."

36.     In or about May 2018, on the Facebook group called "Pin Nation," the following comments appeared: "Nate Russell honestly dog. These are TRaSH [sic]. Totally garbage. Hope you have zero success trying to monopolize f*cking ART."; "Sloth steady = garbage"; Sloth steady is money hungry and bought all the rights to selling pins at electric forest. SUPPORT REAL ART NOT THESE FAKE ASSES"

37.     A "Boycott Sloth Steady" group has been created on Facebook (the number of users of which has been well documented to be in the billions). A graphic rendition of a sloth was posted on that group page with the text "Boycott the Sloth – Sloth Steady Hurts Artists."

38.     On May 28, 2018, a lengthy post was placed on the "Boycott Sloth Steady" group page. This post stated, in pertinent part "Don't Feed The Animals! This year Sloth Steady and the festival promoters are making big moves to restrict what artists can make and sell at electric forest… This not only hurts all new artists but also cheapens the experience for every festival goer by giving us less options and choices on how we spend our money. Join us by liking and sharing this page… Boycott Sloth Steady…"

39.     But this post was not simply a random post that would only be seen by someone who would have known to visit the "Boycott the Sloth" group page. Rather, this was a "Sponsored" advertisement, which allowed the author of the post, for a fee paid to Facebook, to target chosen Facebook users (for example, users who have visited Electric Forest groups or pages on Facebook,

9

FILED DATE: 10/5/2018 2:45 PM    2018L010829

or who have visited lapel pin groups or pages on Facebook, among many other demographics), on whose Facebook feeds this "Sponsored" post would appear. The higher the fee, the more users and the more types of users could be targeted. Thus, in essence, by paying Facebook for the privilege, the author of the post controlled and directed whom, and how many Facebook users, the post would reach.

40.    The post referred to in Paragraph 34 above was, in fact, a paid, "Sponsored" advertisement that cost, on information and belief, at least $500, which ensured a significant "reach" of Facebook users.

41.    Proof of the expansive reach of this Sponsored Ad post is demonstrated by the fact that as of May 31, 2018, 223 people had already "liked" this post, and 226 people were "following" the "Boycott the Sloth" group. In addition, in the three days following the post, 110 people had "shared" it. What is unknown, of course, is, irrespective of whether someone was "following" the group or "liked" the post, to how many people each of the people to whom the post was shared proceeded to share to their own network of friends and followers, and to how many of the billions of Facebook users those people shared the post.

42.    By June 5, just five days later, 372 people had "liked" the post – a 60% increase in "likes" – and 377 people – a 67% increase – were following the group. Furthermore, as of June 5, the post had been shared 229 times, a 108% increase over five days.

43.    According to Facebook's own internal advertising page, a potential Sponsored Ad that is targeted only to those users whose interests include "Electric Forest Festival" has the potential to reach 2,900,000 Facebook users. A copy of Facebook's internal page reflecting this statistic is attached as Exhibit C

44.    Other comments on Facebook were judgmental or simply vile, insulting and/or threatening. They included: "Nobody should be able to buy the rights to sell pins... These

FILED DATE: 10/5/2018 2:45 PM 2018L010829

corporate practices don't have a place on the festy [festival] lot. Our community is about diversity and the acceptance of others."; "They are trying to limit the sale of artists doing their own work. Probably to sell mass produced crap. To make a buck"; "Get these greedy Sh!ts out of our festivals"; "What a bunch of cucks"; "I stopped supporting these guys after all this crap"; "Do not support Sloth Steady Bunch of dumb F*cks"; "F*ck Sloth Steady"; "F*ck him and his crew . . . trying to monopolize on the community"; "F*ck them"; "I would pretend to be a bull in a China shop and f*ck their sh!t up"; "Hell yeah im [sic] down for a nice boycott!!!!"; "Bogusss.......";
"F*ck you sloth steady."

45.     AuroraVizion is a company also owned by Mr. Russell which had sold sunglasses at Electric Forest pursuant to a separate sponsorship agreement between EF and AuroraVizion. Many members of the festival community were and are aware that Mr. Russell owns both Sloth and AuroraVizion.

46.     Thus, although the texts sent by Ms. Heyman pertained only to Sloth and the sales of lapel pins at Electric Forest, because of the awareness in the community of the common ownership between Sloth and AuroraVizion, following the distribution of the text, in addition to the "Boycott the Sloth" Facebook group, another Facebook group, called "Boycott AuroraVizion" was also created.

47.     Sloth and AuroraVizion attended and sold their respective merchandise at two festivals in 2018 prior to Electric Forest, Summer Camp Music Festival and Spring Awakening Music Festival ("SAMF"). These festivals took place, respectively, on May 24-27, 2018 and June 8-10, 2018, in Illinois. Sloth and AuroraVizion also attended and sold their respective merchandise at these festivals in 2017 and 2016.

48.     Sloth's 2017-2018 year-over-year sales at these festivals decreased 50% and AuroraVizion's year-over-year sales at these festivals decreased 25%, the only intervening event

FILED DATE: 10/5/2018 2:45 PM   2018L010829

between 2017 and 2018 being the publication and foreseeable republication to the Electric Forest festival community and the public at large through social media of the false statements about Sloth having "confirmed an exclusive agreement for selling pins at Electric Forest" and having "upgraded their sponsor arrangement to ensure exclusivity." Sloth's and AuroraVizion's incremental revenue loss from these two festivals is estimated to be $32,000.

49.     Sloth and AuroraVizion also attended and sold their respective merchandise at Electric Forest in 2018, which ran the weekends of June 21-24 and June 28-July 1 in Michigan.

50.     In each of the four years preceding 2018 that Sloth had sold its pins at Electric Forest, Sloth's year-over-year sales had increased 100% or greater.

51.     However, despite the virtually sunny and rain-free weather for both weekends of Electric Forest (it was rainy during Electric Forest in 2017), which historically improves ticket sales and increases product sales, Sloth's year-over-year sales at Electric Forest decreased by 30%, while AuroraVizion's year-over-year sales were flat or slightly higher. Sloth's and AuroraVizion's incremental revenue loss from Electric Forest is estimated to be $180,000.

52.     Based upon these results from Electric Forest, Sloth and AuroraVizion felt it would be wasteful of its scarce resources to attend all the festivals it had planned to attend, so it pulled out of all festivals other than the two that they had already contractually committed to attend (Lost Lands, in Ohio, and Imagine, in Georgia). At Lost Lands (held on Sept 13-16), despite a larger footprint, Sloth and AuroraVizion suffered year-over-year decreases of approximately 10%. At Imagine, despite a much larger footprint, Sloth and AuroraVizion we were roughly the equal to or slightly above last year's sales.

53.     Based upon all these results from the festivals Sloth and AuroraVizion attended in 2018, Sloth and Mr. Russell reasonably (indeed, conservatively) estimate that incremental losses over the next several years from festivals they do attend, as well as lost revenue opportunities

12

FILED DATE: 10/5/2018 2:45 PM   2018L010829

associated with festivals they now do not feel it would be economical to attend, will be approximately $270,000. Festival sales represented between 50 and 60% of Sloth's and AuroraVizion's total sales in 2017.

54.     In addition to these clear – and significant – financial losses from festival sales, Sloth and AuroraVizion experienced significant on-line sales decreases.

55.     A critical and telling metric for on-line sales is repeat customers.

56.     Sloth's and AuroraVizion's products are sold on several platforms on the internet, including on their respective websites. Both Sloth's and AuroraVizion's websites are hosted are hosted on shopify.com. In the three calendar quarters prior to the dissemination of the false, defamatory text to the Electric Forest festival community and the public at large through social media, repeat customer purchases (that is, those buying customers who had previously purchased AuroraVizion or Sloth Steady merchandise) averaged 76 per month, whereas in the three calendar quarters since the dissemination of the false, defamatory text, repeat customer purchases have averaged 38 per month, a 50% decrease *among customers already shown to be loyal to these companies*.

57.     Moreover, in the year-over year period from 2016 to 2017 (obviously prior to the dissemination of the false, defamatory text), website revenue grew at a rate of 49.6% (increasing from $25,244 to $37,742).

58.     On the other hand, the overall growth in sales via shopify.com for SlothSteady.com over the nine months since the dissemination of the false, defamatory text has dropped to a mere 2.9% year-over-year versus 2017 (growing from $37,742 to $38,857).

59.     One of the manners in which Sloth increased the brand awareness and sales of its lapel pins – particularly in the off-season for festivals – was by purchasing "Sponsored" advertisements on Facebook.

13

60.     Unfortunately, because of the backlash against Sloth and AuroraVizion caused by the false, defamatory text and its foreseeable – and significant – republication (including, but not limited to, the Sponsored post on the "Boycott the Sloth" group page referred to above in Paragraphs 34-38), there have been scores of negative comments posted on Sloth's Sponsored advertisements, thus reflecting – and spreading further – the negative sentiment toward Sloth caused by defendants' false, defamatory text. This negativity has rendered virtually valueless any further Facebook advertising Sloth might consider, for it now provides a platform for others to insult and deride Sloth, which only feeds on itself in creating more negativity in the marketplace.

61.     In addition, prior to the false, defamatory text described herein, neither Sloth nor AuroraVizion had even one 1-star review (on the Facebook scale of 1 through 5, with 5 stars being the best and 1 being the worst) of their respective products on Facebook. However, since the dissemination of the false, defamatory text described herein, there have been 292 1-star reviews, intensely negative feedback that indelibly follows Sloth, as such reviews are visible to everyone who would ever visit Sloth's Facebook page. The negative effect of these unfounded reviews – all of which followed the dissemination of the false, defamatory text – is virtually incalculable.

62.     The foregoing loss of regular on-line and festival income has stagnated Sloth's growth and forced a freeze on all non-discretionary spending, investment in new inventory and advertising, all of which have contributed to steep incremental revenue losses. In addition, Sloth has had to lay off two of its employees.

63.     As a result, over the next several years, Sloth and AuroraVizion are expected to suffer incremental losses of on-line revenue of a minimum of $1,095,000.

64.     Apart from their festival and on-line product sales Sloth has also historically collaborated with various artists who perform at these festivals, creating branded pins and/or sunglasses for the artists and their fans. Since the dissemination of the false, defamatory text to the

14

FILED DATE: 10/5/2018 2:45 PM    2018L010829

Electric Forest festival community and the public at large through social media, Sloth has also sustained pecuniary damage as a result of numerous artists declining to work with Sloth. Sloth estimates that at least 10 artists have declined to work with it as a consequence of the dissemination of the false, defamatory text to the Electric Forest festival community and the public at large through social media. Sloth's data reflects a wide range of value for collaborations with artists, from $10,000 to as much as $500,000 per collaboration.

65.    Notable artists who have turned down proposed collaborations with Sloth include Aaron Brooks, Ellie Paisley, Chaya AV, Android Jones, KOOZ, & Kater.

66.    Taking a mid-range value, with 10 lost opportunities for such collaborations, Sloth has been damaged by at least $2,500,000 through such lost opportunities.

67.    Wholly apart from these verifiable financial losses occasioned by significant decreases is sales at festivals, at this year's Electric Forest festival, hundreds of festivalgoers took the time to stop by Sloth and AuroraVizion booths simply to tell the employees at the booths that they would not be buying the merchandise any longer. Others merely shouted obscenities at the booths as they passed by without stopping. As if that were not enough, there were thousands of "Sloth Steady Hurts Artists" stickers (the same image that was posted on the "Boycott Sloth Steady" Facebook group page) plastered all over the festival grounds, particularly in the bathrooms (which is undoubtedly the one place where literally every festivalgoer goes multiple times per day). A photograph of this sticker affixed to a pole at Electric Forest is attached as Exhibit D. Sloth is informed and believes that these stickers have been posted at every major festival in 2018, even ones at which Sloth did not sell merchandise.

68.    In addition to stickers, anti-Sloth Steady pins were distributed and/or sold at Electric Forest for the first time ever. A photograph of one of those pins, which was posted on

Facebook (and thus disseminated to hundreds, if not thousands, of Facebook users), is attached as Exhibit E.

69.     In addition to the foregoing, dissemination of the false, defamatory text to the Electric Forest festival community and the public at large through social media has undeniably harmed Mr. Russell's personal reputation, as clearly reflected in several of the comments posted on Facebook, quoted above. This taint will follow Mr. Russell him in whatever other business ventures he engages for years to come.

## COUNT I – DEFAMATION *PER SE*

70.     Plaintiffs repeat and reallege Paragraphs 1-69 as and for this Paragraph 70, as though fully set forth herein.

71.     Defendants have admitted in the email authored by Ms. Schneider that the statements about Sloth set forth in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, were false. Thus, they were necessarily aware of the falsity of the statements when they authorized and/or made them.

72.     The text containing the false statements about Sloth as aforesaid was published to at least one third-party, Mr. Chamberlain.

73.     The false statements set forth in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, clearly imputed to Sloth (and as well, to Mr. Russell, he being known to be Sloth's owner) a want of integrity in the discharge of employment, for they falsely attributed to Sloth (necessarily through Mr. Russell, its owner) the very anti-competitive, anti-"artistic freedom" conduct that is so inconsistent with the message of Electric Forest, which as a result engendered the intensely negative reaction from the Electric Forest community as aforesaid.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

FILED DATE: 10/5/2018 2:45 PM    2018L010829

74.     To the extent defendants' false, defamatory statements are construed to be merely an insinuation as to Sloth's (and as well, Mr. Russel, he being known to be Sloth's owner) want of integrity in the discharge of employment, statements made in the form of insinuation may be considered as defamatory as positive and direct assertions of fact.

75.     The false statements set forth in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, also clearly prejudiced Sloth (and as well, Mr. Russell, he being known to be Sloth's owner) in its business, for they falsely attributed to Sloth, or at least insinuated as to Sloth (and, necessarily, Mr. Russell, its owner) the very anti-competitive, anti-"artistic freedom" conduct that is so inconsistent with the message of Electric Forest, which as a result engendered the intensely negative reaction from the Electric Forest community as aforesaid.

76.     Defendants possessed no privilege when they published or authorized the publication of the text containing the false, defamatory statements about Sloth as aforesaid.

77.     Because defendants authorized or published the defamatory statements about Sloth to one of Sloth's competitors in the close-knit Electric Forest community, it was reasonably foreseeable to defendants that the defamatory statements they authorized and/or made would be republished to others within and without the Electric Forest community.

78.     Because it was reasonably foreseeable to defendants that the defamatory statements they authorized and/or made would be republished to others within and without the Electric Forest community, defendants are liable for the damages resulting from the republication as though they themselves published the defamatory statements to all those who received the republication.

79.     Plaintiffs have been damaged by the publication of the defamatory statements as aforesaid.

FILED DATE: 10/5/2018 2:45 PM    2018L010829

80.    Because the defamatory statements in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, were and are defamatory *per se*, damages to plaintiffs are presumed.

81.    On information and belief, defendants Madison House and Insomniac authorized, and defendant EF, through Ms. Heyman, sent, the text containing the defamatory statements as aforesaid to protect themselves from the backlash they anticipated would befall them from within the EF community had they been truthful and admitted that it was their unilateral decision to eliminate competition and discourage artistic expression by cloaking one pin vendor, Sloth, with full exclusivity at the 2018 Electric Forest festival.

82.    In authorizing and/or sending the text containing the defamatory statements as aforesaid about Sloth, then, defendants acted with utter disregard for the consequences that would befall Sloth, that is, becoming the subject and the object of the very backlash they wished to avoid for themselves.

83.    This disregard of Sloth's interests and reputation favor or and in order to maintain their own interests and reputation showed actual malice on the part of the defendants with respect to Sloth and Mr. Russell.

84.    As a result of these malicious acts as aforesaid by defendants, an award of punitive damages against all defendants is warranted.

WHEREFORE, plaintiffs, Roots Rock Rage, LLC d/b/a Sloth Steady and Nathan Russell, respectfully pray that this Court enter judgment in their favor and against defendants, Electric Forest, LLC, Madison House Presents, LLC and Insomniac Holdings, LLC, in an amount to be proven at trial but in no event less than $4.077,000, plus punitive damages in the amount of $5,000,000 to deter defendants from engaging in this malicious, wrongful conduct in the future, and for any other and further relief this Court deems necessary, just and proper.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

## COUNT II – DEFAMATION *PER QUOD*
### (in the alternative to Count I)

85.   Plaintiffs repeat and reallege Paragraphs 1-69 as and for this Paragraph 85, as though fully set forth herein.

86.   Defendants have admitted in the email authored by Ms. Schneider that the statements about Sloth set forth in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, were false. Thus, they were necessarily aware of the falsity of the statements when they authorized and/or made them.

87.   The text containing the false statements about Sloth as aforesaid was published to at least one third-party, Mr. Chamberlain.

88.   In light of Electric Forest's commitment to free artistic expression, communal experience and atmosphere of oneness between artists, vendors and festivalgoers, defendants' false representations attributing to Sloth the capitalistic, monopolistic actions that are wholly inconsistent with the Electric Forest ideals were clearly defamatory on their face, even if they were not defamatory *per se*.

89.   Defendants possessed no privilege when they published or authorized the publication of the text containing the false statements about Sloth as aforesaid.

90.   Because defendants authorized or published the defamatory statements about Sloth to one of Sloth's competitors in the close-knit Electric Forest community, it was reasonably foreseeable to defendants that the defamatory statements they authorized and/or made would be republished to others within and without the Electric Forest community.

91.   Because it was reasonably foreseeable to defendants that the defamatory statements they authorized and/or made would be republished to others within and without the Electric Forest

FILED DATE: 10/5/2018 2:45 PM    2018L010829

community, defendants are liable for the damages resulting from the republication as though they themselves published the defamatory statements to all those who received the republication.

92.     Plaintiffs have been damaged by the publication of the defamatory statements as aforesaid in Paragraphs 35-69, all of which are repeated and realleged herein by reference.

93.     On information and belief, defendants Madison House and Insomniac authorized, and defendant EF, through Ms. Heyman, sent, the text containing the defamatory statements as aforesaid to protect themselves from the backlash they anticipated would befall them from within the Electric Forest community had they been truthful and admitted that it was their unilateral decision to eliminate competition and discourage artistic expression by cloaking one pin vendor, Sloth, with full exclusivity at the 2018 Electric Forest festival.

94.     In authorizing and/or sending the text containing the defamatory statements as aforesaid about Sloth, then, defendants acted with utter disregard for the consequences that would befall Sloth, that is, becoming the subject and the object of the very backlash they wished to avoid for themselves.

95.     This disregard of Sloth's interests and reputation favor of and in order to maintain their own interests and reputation showed actual malice on the part of the defendants with respect to Sloth and Mr. Russell.

96.     As a result of these malicious acts as aforesaid by defendants, an award of punitive damages against all defendants is warranted.

WHEREFORE, plaintiffs, Roots Rock Rage, LLC d/b/a Sloth Steady and Nathan Russell, respectfully pray that this Court enter judgment in their favor and against defendants, Electric Forest, LLC, Madison House Presents, LLC and Insomniac Holdings, LLC, in an amount to be proven at trial but in no event less than $4,077,000, plus punitive damages in the amount of

FILED DATE: 10/5/2018 2:45 PM    2018L010829

$5,000,000 to deter defendants from engaging in this malicious, wrongful conduct in the future, and for any other and further relief this Court deems necessary, just and proper.

## COUNT III – FALSE LIGHT

97.    Plaintiffs repeat and reallege Paragraphs 1-69 as and for this Paragraph 97, as though fully set forth herein.

98.    Defendants have admitted in the email authored by Ms. Schneider that the statements about Sloth set forth in the text authorized, on information and belief, by Madison House and Insomniac and sent by EF, through Ms. Heyman, were false. Thus, they were necessarily aware of the falsity of the statements when they authorized and/or made them.

99.    Because of the close-knit nature as aforesaid of the Electric Forest community, a special relationship existed between and among: (a) the promoters and organizers of Electric Forest; (b) the artists, artisans and vendors associated with Electric Forest including specifically Sloth and Mr. Russell; (c) the performers at Electric Forest; and (d) the festivalgoers at Electric Forest.

100.    Defendants have admitted this close and special relationship on their respective websites. See Paragraphs 13-15 herein.

101.    In light of this close and special relationship between Sloth and Mr. Russell, on the one hand, and Mr. Chamberlain and the other artisan vendors and the Electric Forest festivalgoers on the other hand, publication to Mr. Chamberlain (and his reasonably foreseeable republication to others within the Electric Forest community) is sufficient to render defendants' authorization and/or publication of the false statements about Sloth to "the public."

102.    As a result of defendants' actions as aforesaid, plaintiffs were placed in a false light before the Electric Forest public.

FILED DATE: 10/5/2018 2:45 PM   2018L010829

103.    In light of Electric Forest's commitment to free artistic expression, communal experience and atmosphere of oneness between artists, vendors and festivalgoers, defendants' false representations attributing to Sloth the capitalistic, monopolistic actions that are wholly inconsistent with the Electric Forest ideals would be highly offensive to a reasonable person.

104.    On information and belief, defendants took the actions described in this Complaint to protect themselves from the backlash they anticipated would befall them from within the Electric Forest community had they been truthful and admitted that it was their unilateral decision to eliminate competition and discourage artistic expression by cloaking one pin vendor, Sloth, with full exclusivity at the 2018 Electric Forest festival.

105.    In authorizing and/or sending the text containing the foregoing false statements about Sloth, then, defendants acted with utter disregard for the consequences that would befall Sloth, that is, becoming the subject and the object of the very backlash defendants wished to avoid for themselves.

106.    This disregard of Sloth's interests and reputation favor of and in order to maintain their own interests and reputation showed actual malice on the part of the defendants with respect to Sloth and Mr. Russell.

107.    Plaintiffs have been damaged by the dissemination to the Electric Forest public with whom plaintiffs have a special relationship as aforesaid as described in Paragraphs 35-69, all of which are repeated and realleged herein by reference.

108.    In addition, as a result of these malicious acts as aforesaid by defendants, an award of punitive damages against all defendants is also warranted.

WHEREFORE, plaintiffs, Roots Rock Rage, LLC d/b/a Sloth Steady and Nathan Russell, respectfully pray that this Court enter judgment in their favor and against defendants, Electric Forest, LLC, Madison House Presents, LLC and Insomniac Holdings, LLC, in an amount to be

FILED DATE: 10/5/2018 2:45 PM   2018L010829

proven at trial but in no event less than $4,077,000, plus punitive damages in the amount of $5,000,000 to deter defendants from engaging in this malicious, wrongful conduct in the future, and for any other and further relief this Court deems necessary, just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL CLAIMS.**

ROOTS ROCK RAGE, LLC d/b/a
SLOTH STEADY
NATHAN RUSSELL

By:_____ /s/ Richard K. Hellerman____
One of Their Attorneys

Richard K. Hellerman
The Law Office of Richard K. Hellerman, P.C.
222 S. Riverside Plaza, Suite 2100
Chicago, IL 60606
(312) 775-3646
(312) 648-1212 (fax)
rkhellerman@hellermanlaw.com



☐ ⚑ :: Darcy Schneider    Re: EF Pins etc.  - Yes. We are meeting on it now. Can we push o...    12:51 PN  ×

☐ ⚑ :: Stephanie Cucin...  Re: Hula17 - Sloth Steady Pins  - Sounds great, thanks! On W...    11:29 AI  ×

Reply   Reply All   Forward ▾   Edit as new   Add to ▾

⚑ ∨ Craft Vending to "Justin Chamberlain", "Darcy ...    ✉ ☐ ⊟ 📅

We would like to address a couple issues that seem to have found their way online the last couple days regarding festival pin exclusivity.

1) The decision to take on an exclusive pin vendor for the Festival was made solely by festival management. This was not directed by any vendor or sponsor.

2) EF management chose to do this for the following reasons:

    a) We have experienced problems with vendors selling unlicensed festival pins and artist pins, which causes legal issues

    b) We want a generally more diverse marketplace on site

If there are any other concerns regarding this decision or the miscommunication that was provided previously, please forward them directly to me.

Darcy

Large Smart Chat Conversation?

⚑ 26198222_102085640...jpg ▾  |  ⚑ 26731036_1021130953...jpg ▾    ⬇ Show All

        ᴄ́    ×      0%

EXHIBIT A

FILED DATE: 10/5/2018 2:45 PM   2018L010829

From : Craft Vending<craftvending@electricforestfestival.com>
To : "Jon Wilson"<turnipthebeet@yahoo.com>
Cc : "Darcy Schneider"<darcy@madisonhousepresents.com>,<nate@slothsteady.com>
Date : Wed, 10 Jan 2018 15:38:22 -0800
Subject : Fwd: Response to pin issue
=========== Forwarded message ===========

Hi, Jon and Brandy.  I apologize if I gave the wrong impression regarding product exclusivity.
Please see email below.


Thanks, Judy



**Judy Heyman**
Craft Vending Manager
craftvending@electricforestfestival.com
Electric Forest Festival June 21-24 **&** June 28-July 1, 2018



---------- Forwarded message ----------
From: **Darcy Schneider** <darcy@madisonhousepresents.com>
Date: Wed, Jan 10, 2018 at 2:25 PM
Subject: Response to pin issue
To: Judy Heyman <craftvending@electricforestfestival.com>


Judy,

**EXHIBIT B**

FILED DATE: 10/5/2018 2:45 PM   2018L010829

We would like to address a couple issues that seem to have found their way online the last couple days regarding festival pin exclusivity.

1) The decision to take on an exclusive pin vendor for the Festival was made solely by festival management. This was not directed by any vendor or sponsor.

2) EF management chose to do this for the following reasons:

    a) We have experienced problems with vendors selling unlicensed festival pins and artist pins, which causes legal issues

    b) We want a generally more diverse marketplace on site

If there are any other concerns regarding this decision or the miscommunication that was provided previously, please forward them directly to me.

Darcy

FILED DATE: 10/5/2018 2:45 PM   2018L010829

**Edit Audience**

Make sure to save your edits once you're done

Name

Ef gold

Gender ❶

All     Men     Women

Age ❶

16 ▼   ·   33 ▼

Locations ❶

United States

**❶ United States**

Add location

Detailed Targeting ❶

INCLUDE people who match at least ONE of the following ❶

Interests > Additional Interests > Electric Forest Festival

**Electric Forest Festival**

Suggestions   Browse

Your audience size is **defined**. Good job!

Potential Reach: 2,900,000 people
❶

Specific     Broad

Delete                                                    Cancel   **Save**

EXHIBIT C



EXHIBIT D



**Gonzalito Sosa**

Jun 14 at 10:16am · 🌐

Dammmn! I'm so amped with these! Whose going to electric forest this year!? These will all be shipped out by Tuesday, hit me up if you'd like one and I'll send you an invoice

FILED DATE: 10/5/2018 2:45 PM    2018L010829



EXHIBIT E