# EXHIBIT A

### Sponsorship Agreement

This Sponsorship Agreement ("Agreement") is made as of __Feb. 23__, 2015 by and between **Electric Forest, LLC**, a Delaware limited liability company, with offices at 2060 Broadway Street, Suite 225, Boulder CO 80302 ("Promoter") and **Roots Rock Rage, LLC** at 529 W Ash Street, Mason, MI 48854 ("Sponsor").

### Recitals

WHEREAS, Promoter is involved in promoting **"Electric Forest"** festival which is scheduled to be held from Thursday, June 23, 2016 to Sunday, June 26, 2016, at the Double JJ Resort at 5900 S. Water Road in Rothbury, Michigan (the "Venue") (the "2016 Event") and on dates to be determined at the Venue in 2017 (the "2017 Event") and 2018 (the "2018 Event") (each, individually and "Event" and collectively, the "Events").

WHEREAS, Sponsor desires to become a sponsor of the Event pursuant to the terms set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing promises and mutual covenants, and for other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, the parties agree as follows:

1. Term. Subject to either party's rights to terminate this Agreement in accordance with the terms hereof, the term of this Agreement ("Term") shall commence as of the date hereof and expire the later of the day after the 2018 Event or the date on which all obligations of the parties have been fulfilled.

2. Cost. As consideration for the rights and benefits granted by Promoter hereunder, Sponsor agrees to pay to Promoter as follows:

    - 2016 Event: $15,000.00;
    - 2017 Event: $15,000.00; and
    - 2018 Event: $15,000.00, (collectively, the "Fee").

    The Fee is due according to the following schedule:

    - 2016: $5,000.00 due no later than ten (10) days from the full execution of this Agreement; $5,000.00 due on or before April 30, 2016; and $5,000.00 due on June 1, 2016.
    - 2017: $5,000.00 due on or before January 1, 2017; $5,000.00 due on or before February 15, 2017; and $5,000.00 due on April 15, 2017.
    - 2018: $5,000.00 due on or before January 1, 2018; $5,000.00 due on or before February 15, 2018; and $5,000.00 due on April 15, 2018.

3. Sponsor Benefits. In exchange for payment of the Fee, Promoter agrees that Sponsor shall have the rights and benefits set forth in Exhibit A (the "Elements") for the Events. Sponsor acknowledges that there are additional costs to Sponsor associated with the Elements and unless otherwise expressly agreed in writing by both parties, additional costs, including but not limited to all materials for advertising such as artwork and costs associated with the production and execution of the Elements, shall be the sole responsibility of Sponsor. All out-of-pocket costs for promotions, client entertainment, etc, which are not specifically included in Exhibit A as being the responsibility of Promoter, shall be paid for and provided by the Sponsor. All tickets or passes to the Events granted to Sponsor as part of the Elements are for Sponsor's use including for promotional purposes; provided, however, all promotions must be approved in writing by Promoter in advance and any resale of any Event tickets or passes is prohibited.

4. Force Majeure. In the event either party is unable to carry out its material obligations under this Agreement by reason of a Force Majeure Event (as defined below), the same shall not constitute a breach of this Agreement by such party. Notwithstanding the foregoing, if the Force Majeure Event results in Promoter being unable to reschedule the within the same calendar year, Sponsor will be entitled to terminate this Agreement as to that Event in that year only upon written notice to Promoter and Promoter agrees to refund to Sponsor the Fee paid to Promoter in connection with such Event less the reasonable fair market value of the benefits provided to Sponsor as of the date of such termination. As used herein, the term "Force Majeure Event" shall mean the occurrence of an event outside the reasonable control of either party such as artist

death or illness; accident; an act or regulation of public authority; fire; riot or civil commotion; labor dispute; terrorist acts or threats; acts or declarations of war; disease; epidemic; substantial interruption in, or substantial delay or failure of, technical facilities; failure or substantial and extraordinary delay of necessary transportation services; war conditions; emergencies; inclement weather or acts of God.

5. Representations and Warranties; Covenants. Each party hereby represents, warrants and agrees that (a) it has the full right and authority to enter into and fully perform this Agreement in accordance with its terms and that this Agreement constitutes a valid, binding and enforceable agreement of such party, (b) it shall perform its activities under this Agreement in accordance with all applicable Federal, state and local laws and regulations, (c) the execution, delivery and performance of this Agreement will not violate the provisions of any agreement to which it is a party or by which it is bound and (d) it shall, at its own cost, apply for and secure any and all permits, licenses or other consents which may be required for the performance of its obligations under this Agreement.

6. Trademarks and Copyrights.

    a. The parties each represent that they own all trademarks, service marks, names, logos, designs, product identifications, artwork and other symbols and devices associated with the Events, in the case of Promoter ("Event Trademarks"), and the Products, in the case of Sponsor ("Sponsor Trademarks"), or otherwise have the right to grant and to use the Trademarks as contemplated herein. The parties each grant to the other a limited right to use only for the purposes of advertising and promoting the Events and only during the term of this Agreement, the Event Trademarks and Sponsor Trademarks, and any copyrighted or copyrightable materials which include any marks or names related thereto (the "Intellectual Property"). All reproduction and use of the Intellectual Property of either party shall be under the strict control and supervision of the owner. All Intellectual Property supplied to the other party under this Agreement shall belong to and remain the sole property of the owner and neither party shall have or acquire any right to copy, reproduce, publish or use such other party's Intellectual Property except in connection with the specific purposes of and in accordance with this Agreement. Upon termination or expiration of this Agreement, usage of such other party's Intellectual Property shall cease and neither party is entitled thereafter to use or refer to the other party's Intellectual Property in any manner except for Intellectual Property already incorporated into materials related to the Event.
    b. Notwithstanding the foregoing in part (a) of this Section, Sponsor acknowledges that Promoter and its designees may film footage and photograph activities from the Events; accordingly Sponsor grants Promoter a non-exclusive, perpetual, worldwide, license to use, sublicense or otherwise exploit the Sponsor Trademarks, and Sponsor shall ensure that its agents, contractors, and employees grant such a right to their likeness, to the extent such are incorporated in an incidental manner in audio visual productions and other promotional materials created by Promoter or its designees concerning the Event and in connection with the exploitation, marketing and promotion of such productions, in any manner or medium now known or hereafter devised. This right shall be freely assignable by Promoter and shall survive the termination of this Agreement.

7. Indemnification. The parties hereby agree to protect, defend, indemnify and hold harmless each other, and their respective affiliates, co-promoters (if any), officers, directors, shareholders, members, agents and employees from and against any and all claims, demands, damages, losses or expenses, of any nature whatsoever, including court costs and reasonable attorneys' fees, arising directly or indirectly from or out of any breach by that party or its affiliates, officers, directors, shareholders, members, agents, subcontractors and employees of any of its representations, warranties or obligations hereunder or their negligence or willful misconduct, except to the extent attributable to the negligence or willful misconduct of the other party. This section shall survive the termination of this Agreement.

8. Insurance.

    a. Promoter will procure and maintain in force with duly licensed insurance carriers the following occurrence-based insurance for each Event during the duration of this Agreement: (i) worker's compensation insurance coverage adequate to comply with all statutory requirements covering all persons employed by Promoter hereunder and employer's liability with minimum limits of at least

One Million Dollars (US$1,000.000.00); (ii) commercial general liability insurance covering bodily injury and property damage with minimum limits of at least Two Million Dollars (US$2,000,000.00) for any claim arising out of a single occurrence and Five Million Dollars (US$5,000,000.00) for all claims in the aggregate, and (iii) to the extent applicable as it would pertain to the obligations hereunder, business auto liability insurance with a limit of not less than One Million Dollars (US$1,000,000) each accident. No later than 30 days prior to an Event, Promoter will deliver to Sponsor certificates evidencing the existence of the insurance required by this Agreement and with an endorsement which shall endorse Sponsor as an additional insured under the policies in (ii) and (iii) above. Such certificates shall also provide that such coverage will not be canceled or the subject of a material adverse amendment without at least ten (10) days prior written notice to Sponsor. Upon any cancellation and/or material adverse amendment of any such insurance coverage, and prior to the effective date thereof, Promoter will deliver replacement insurance to Sponsor.

b. Sponsor shall procure and maintain in force with duly licensed insurance carriers the following occurrence-based insurance for each Event during the duration of this Agreement: (i) worker's compensation insurance coverage adequate to comply with all statutory requirements covering all persons employed by Sponsor hereunder and employer's liability with minimum limits of at least One Million Dollars (US$1,000.000.00); (ii) a commercial general liability insurance policy including advertising, errors and omissions injury coverage with limits of not less than Two Million Dollars (US$2,000,000.00) per claim or Five Million Dollars (US$5,000,000) in the aggregate, and (iii) to the extent applicable as it would pertain to the obligations hereunder, business auto liability insurance with a limit of not less than One Million Dollars (US$1,000,000) each accident. The insurance required hereunder shall be considered primary and non-contributory insurance and all insurance carried by Promoter, its agents, employees, and the parties for which it is operating, shall be considered secondary in relation thereto. No later than 30 days prior to an Event and prior to Sponsor's access to the Venue for the Event, Sponsor will deliver to Promoter certificates evidencing the existence of the insurance required by this Agreement and with an endorsement which shall endorse Promoter, **Electric Forest, LLC; Madison House Presents, LLC; Insomniac Holdings, LLC; AEG Live, LLC; Anschutz Entertainment Group Inc.; Live Nation Entertainment, Inc.; Antler Bar Amusements, LLC; Thoroughbred Investments, LLC; Double JJ Propco, LLC; Survivor Quest,** and each of their respective parent companies, subsidiaries, affiliates, officers, directors, representatives, employees, subcontractors, agents and any other party reasonably designated by these entities as additional insureds under the policies in (ii) and (iii) above. Such certificates shall also provide that such coverage will not be canceled or the subject of a material adverse amendment without at least ten (10) days prior written notice to Promoter. Upon any cancellation and/or material adverse amendment of any such insurance coverage, and prior to the effective date thereof, Sponsor will deliver replacement insurance to Promoter.

9. Termination. This Agreement may be terminated for cause by either party on written notice to the other party upon the happening of any one of the following: (i) the filing by or against either party of a petition for bankruptcy or for relief from creditors under any equivalent state law or regulation, or (ii) by either party if there is a material breach, failure to perform or default by the other party in the performance of any of its material obligations, representations or warranties provided for in this Agreement, and such breach, failure to perform or default, if curable, is not cured within three (3) days of one party's receipt of written notice from the other. In the event this Agreement is terminated by Sponsor in accordance with part (ii) of this paragraph set forth above, Promoter agrees to refund to Sponsor any amounts paid to Promoter with respect to such Event less the reasonable fair market value of the benefits provided as of the date of such termination as Sponsor's sole remedy. In the event that the Promoter chooses to cancel an Event (for reasons other than a Force Majeure Event) or to not produce it, Promoter may terminate this Agreement as to such Event, by giving notice to Sponsor at any time, which notice shall be effective immediately. In the event of such termination, Promoter shall, promptly after the effective date of such termination, refund to Sponsor any portion of the Fee previously received by Promoter for such cancelled or terminated Event less the reasonable fair market value of the benefits provided as of the date of the termination as Sponsor's sole remedy hereunder.

10.     <u>Waiver of Property Damage</u>. Sponsor agrees that Promoter shall not be responsible for any loss or damage to any property of Sponsor at the Event resulting from fire, theft or any other causes and Sponsor expressly assumes all risks of loss, damage or destruction of or to any of its property resulting from any such causes.

11.     <u>Notices</u>. All notices and communications regarding the performance and responsibilities of the respective parties and otherwise given by either party to the other party to this Agreement shall be in writing and shall be delivered in person (by hand or by messenger), or shall be sent by regular or certified mail, return receipt requested or U.S. Postal Service Express Mail or Federal Express, UPS or other similar recognized private overnight delivery service, prepaid. Notice given as provided herein shall be deemed to have been given on the date it was received as evidenced by signature, or date of first refusal, if that be the case. Notice hereunder shall be addressed to the parties at the addresses first set forth above. Either party may change the address at which it receives notices by notifying the other party of such change in the manner provided herein.

12.     <u>Restriction of Assignment</u>. Neither party shall have the right or power to assign its rights or obligations under this Agreement without the written consent of the other party; except that Promoter shall be entitled to assign its rights and obligations hereunder to an affiliated or related party without the prior written consent of Sponsor. Any purported assignment not in accordance with this section shall be null and void.

13.     <u>Waiver.</u> The failure of either party to enforce any provision or condition contained in this Agreement at any time will not be construed as a waiver of that condition or provision nor will it operate as a forfeiture of any right of future enforcement of the condition or provision.

14.     <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties and merges any prior representations, warranties, or understandings they may have had regarding the subject matter of this Agreement. This Agreement may not be amended or modified except by a writing executed by both parties.

15.     <u>Counterpart; Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original. Facsimile copies, PDFs and photocopies of signatures shall be as valid as originals.

16.     <u>Governing Law; Forum Selection Clause</u>. This Agreement and the parties' conduct arising out of or related to it shall be governed by California law, without regard to its choice of law rules. Any dispute arising out of or related to this Agreement must be brought in federal or state court in Los Angeles County, and the parties hereby consent to the exclusive jurisdiction and venue of such forum.

17.     <u>Severability</u>. If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect the other provisions of this Agreement provided that the material terms of this Agreement can be given their intended effect without the invalid provisions, and to this extent the provisions of this Agreement are declared to be severable.

18.     <u>No Restrictions</u>. Nothing contained in this Agreement shall be deemed in any way to prohibit or restrict the right or freedom of either party to conduct any business activity unrelated to the Event without any obligation or accountability to the other even if such business or activity directly competes with the business of the other.

IN WITNESS WHEREOF the parties have executed this Agreement by their properly authorized signatories as of the date first written above.

| ROOTS ROCK RAGE, LLC | ELECTRIC FOREST, LLC |
|---|---|
| By: *Nathan Russell* | By: [DocuSigned signature]    3/23/2016 |
| Name: Nathan Russell | Name: Jeromy Bechem |
| Title: Owner-CEO | Title: President |

## Sponsor Rights and Benefits for Event

**SPONSOR OBLIGATIONS:**

In addition to the Fee, for each year of the Term Sponsor shall provide the following for each Event:

**2016**: Sponsor shall design three (3) custom pins and shall produce and provide six hundred (600) Official Festival Pins, five hundred (500) Loyalty Pins and three hundred (300) Special Activation Pins to Promoter. Sponsor shall also provide twenty (20) miscellaneous items to be used for the Festival Monarch program prizing, and twenty (20) miscellaneous items to be used for Electricology Plug In program prizing. All miscellaneous items shall be subject to the approval of Promoter. All designs shall be subject to the prior written approval of the Promoter. Sponsor shall be solely responsible for all production costs including design and shipping fees.

**2017**: Sponsor shall design three (3) custom pins to produce and provide six hundred (700) Official Festival Pins, five hundred (500) Loyalty Pins, three hundred (300) Special Activation Pins. Sponsor shall also provide twenty (20) miscellaneous items to be used for the Festival Monarch program prizing, and twenty (20) miscellaneous items to be used for Electricology Plug In program prizing. All miscellaneous items shall be subject to the approval of Promoter. All designs shall be subject to the prior written approval of the Promoter. Sponsor shall be solely responsible for all production costs including design and shipping fees.

**2018**: Sponsor shall design three (3) custom pins to produce and provide six hundred (800) Official Festival Pins, five hundred (500) Loyalty Pins, three hundred (300) Special Activation Pins. Sponsor shall also provide twenty (20) miscellaneous items to be used for the Festival Monarch program prizing, and twenty (20) miscellaneous items to be used for Electricology Plug In program prizing. All miscellaneous items shall be subject to the approval of Promoter. All designs shall be subject to the prior written approval of the Promoter. Sponsor shall be solely responsible for all production costs including design and shipping fees.

**Sponsor Sale of Pins:** Sponsor shall have the right to design three (3) additional custom pins subject to the prior written approval of Promoter as to the design which shall include 80 golden ticket pins that entitle customer to win a free pin provided by Sponsor ("Sponsor Pins"). Once approved, Sponsor may sell 300 Sponsor Pins each day of the Festival and a total of 200 Official Festival Pins at two (2) activation locations as specified below. Sponsor shall be solely responsible for all production costs including design and shipping fees. Sponsor shall not be authorized to sell any of the pins after the Festival in each year.

Sponsor shall be an exclusive pin sponsor of the Event.

**Onsite Activation**

- <u>Fan Engagement Area:</u> Subject to any restrictions of the venue at the Event, Sponsor shall be allocated the following for each year of the Term:

    - One (1) minimum 10' x 10' footprint at a location in high traffic area within the venue for an activation using Promoter provided tenting to serve as an opportunity for Sponsor to interact with Event guests including vending and/or gifting of premium product upon prior written approval by Promoter;

    - One (1) minimum 10' x 20' footprint at a location on the "main street" using Promoter provided tenting to serve as an opportunity for Sponsor to interact with Event guests including vending and/or gifting of premium product upon prior written approval by Promoter; and

- Sponsor's activation areas will be setup in the same locations as they were in 2015. If such locations are not available, then Promoter and Sponsor will mutually agree on the new locations of Sponsor's activation areas, which shall be subject to the Event's site specifications.

- Sponsor will have the opportunity to run onsite promotions within 75 ft from both activation spaces. All promotions subject to Promoter's prior review and written approval. Sponsor shall be solely responsible for compliance with all applicable laws with respect to the promotions it conducts.

  - Promoter shall provide Sponsor with the following standard set up for the activation:

    o Tent/Walls: as listed above, unless Sponsor is providing tent or activation structure, subject to Promoter's prior written approval;

    o Power Drop: 20 Amp, 110 Volt;

- Sponsor will also provide and pay for all point-of-sale signage integrating Festival logo for Sponsor activation areas the event, to be approved by Promoter.

- Promoter to provide co-branded signage for the Festival Official Merchandise areas.

**Marketing / Promotional Rights**

- <u>Advertising:</u> Sponsor may use the "Electric Forest" logo and name within internal and external communications, advertising and promotions, subject to Promoter's prior review and written approval as to the content and each use and for no later than December 31, 2018 unless otherwise agreed to by Promoter in writing.

- Sponsor will have the opportunity to photograph Sponsor's onsite activation at the Event and use such content for non-commercial use on its marketing and social media platforms subject to Promoter's prior review and written approval as to the content and use. Use of any third party content or any content that may require approval, release or license from any third party shall be the sole responsibility of Sponsor.

- If prior approval of sponsor media plan has been granted, Sponsor agrees to comply with the Event's media rules for the capture and publication of audio, video, photo and written material. All requests are subject to Promoter's prior written approval. Media rules to be provided to Sponsor prior to the Event.

- <u>Promotions.</u> Product provided by the Sponsor shall be included in Plug In program prizing as listed above.

- Promoter shall develop, promote, activate and oversee all aspects of the Plug In activities and programing. Plug In programs and activities are subject to revision and development if needed, at sole discretion of Promoter.

**Online**

- <u>Event Website:</u> Sponsor's logo and link to its official website shall appear on the "Partners Page" of the Event's official website, and the page within the Event website dedicated to Plug In programing. Sponsor logo included on the "Electricology Program Page" of the Electricology's official website. Promoter shall have the right to use and alter Sponsor's logo size and logo color including black/white and tonal treatments, at Promoter's sole discretion, for advertising and promotional purposes associated with the Event.

- <u>Social Media:</u> Sponsor's involvement with the Event shall be included in a total of five (5) social media messages, herein referred to as "Social Media Post(s)" including the following:
    o One (1) Social Media Post via Festival platform in support of the Official Festival Pin sales;
    o Two (2) Social Media Post via Festival platform in support of Sponsor run online promotions and other TBD content;
    o One (1) Social Media Post via Festival platform in connection with the Festival Monarch Plug In program release;
    o One (1) Social Media Post via Festival platform in connection with the Festival Monarch Plug In program winner annoucement;
    o One (1) Social Media Post via Electricology platform with inclusions in Electricology Plug In program prizing.

- At Promoter's sole discretion, the Social Media Posts will be made on one of the following social media outlets: (i) Facebook®; (ii) Instagram®; (iii) Twitter ®; (iv) Snapchat ®; or (v) the Event's official website.
  - <u>Event Application:</u> Sponsor shall be included in the Event's mobile application herein referred to as "Mobile App":
    - One (1) logo banner inclusion under the "Partners" tab on the Mobile App; and
    - One (1) 640x184 clickable image to Sponsor's official website.

### Tickets

- Five (5) "artist" guest passes for sponsor staff, no access to GOOD LIFE (VIP) camping
- Five (5) working passes for sponsor staff
- Six (6) general admission weekend wristbands for promotional giveaways