**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY, a Michigan limited liability company, and NATHAN RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRIC FOREST, LLC, a Delaware limited liability company, MADISON HOUSE PRESENTS, LLC, a Delaware limited liability company, and INSOMNIAC HOLDINGS, LLC, a Delaware limited liability company,<br><br>Defendants. | No.  18 CV 7418<br><br>Honorable Rebecca R. Pallmeyer |

## RESPONSE TO RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE

Plaintiffs, ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY ("Sloth"), and NATHAN RUSSELL ("Mr. Russell") (collectively, "Plaintiffs"), by their attorneys, Richard K. Hellerman (The Law Office of Richard K. Hellerman, P.C., *of counsel*), submit this Response to Defendants' Rule 12(b)(3) Motion to Dismiss for Improper Venue [D/E #10] (the "Motion"[1]), stating as follows:

## INTRODUCTION

Defendants' Motion is entirely based on a faulty and inaccurate premise: That the Complaint arises out of or is related to the Sponsorship Agreements and amendments (collectively,

---

[1] For purposes of this Response, Plaintiffs will refer to the Motion [DE #10] and the Memorandum of Law in Support of the Motion [DE #11] collectively as the "Motion." However, all citations herein to the "Motion" will actually come from the Memorandum [DE #11].

the "Agreement") between Sloth and Electric Forest, LLC ("Electric Forest"). From that incorrect premise, Defendants argue that a forum selection clause contained within the Agreement therefore controls where Plaintiffs are permitted to bring their suit. Defendants cite to irrelevant case law about which state's law governs the venue argument raised in the Motion, as the cases they cite dealt with a question not presented here at all – the *validity* of a forum selection clause in a contract. In fact, in their Complaint, Plaintiffs make no reference whatsoever to the forum selection clause in the Agreement, much less its validity or invalidity, and for good reason; Plaintiffs' claims do not arise under or out of, nor are they related to, the Agreement. Thus, nothing about this case involves, in even the most tangential manner, the Agreement or any analysis of the validity of the forum selection clause within the Agreement.

Regardless, Defendants have asserted (based on this wholly inapplicable case law) that California law applies to this action. For purposes of this Court's resolution of this Motion, however, it does not matter whether the Court applies California law or Illinois law, for the result is the same – resoundingly so – under either state's law. The malicious defamation (and false light) claims asserted in the Complaint are unrelated to the parties' performance of, or their rights and obligations under, the Agreement and thus, there is no basis to even invoke, much less enforce, the forum selection clause contained in the Agreement. And, as the forum selection clause is the only basis asserted in the Motion for the dismissal of the Complaint, the Motion must therefore be denied.

## **FACTS**

This case arises out of admittedly false statements about Sloth, made with the knowledge and authorization of Defendants Madison House Presents, LLC ("Madison House") and Insomniac Holdings, LLC ("Insomniac") (Complaint, ¶26), by an Electric Forest employee. (Complaint,

¶¶25, 28, 31, 32). The statements, which are reproduced in the body of the Complaint, make no reference to the Agreement into which Sloth and Electric Forest had previously entered and to which both Sloth and Electric Forest were already bound as of the time Electric Forest made the false, defamatory statements. (Complaint, ¶25).

Moreover, the false, defamatory statements did not mention anything either about Sloth's or Electric Forest's performance under the Agreement or their respective rights or obligations under the Agreement. To the contrary, when viewed in the context of the entire message Electric Forest sent to Sloth's competitors – which included an invitation to the recipients of the statements to withdraw their participation in the upcoming 2018 Electric Forest Festival (the "Festival") in exchange for a full refund – the whole point of the statements was to communicate the false notion that Sloth had taken some sort of affirmative actions to ensure complete exclusivity for selling all pins at the Festival, thus eliminating Sloth's competitors from the Festival. (*See* Complaint, ¶25).

As mentioned in both the Complaint and the Motion, Sloth and Electric Forest entered into the first of the Agreements back in 2014, and entered into subsequent Agreements in 2015 and amendments thereto in 2017. (*See* Complaint, ¶¶8, 19; Motion, pp. 2-3 and Exhibits A-E thereto). The only exclusivity afforded to Sloth pursuant to the Agreement was with regard to distribution of official, licensed Electric Forest Festival pins. (Complaint, ¶18). There was no other exclusivity language in the Agreement. (*Id.*). Furthermore, the amendments to the Agreement did not afford Sloth any broader or additional exclusivity with respect to official, licensed Electric Forest Festival pins, nor did they provide any exclusivity to Sloth with respect to the sale of unofficial, unlicensed pins at the Festival. (Complaint, ¶19).

Because Sloth did not have exclusivity for the sale of unofficial, unlicensed pins at the Festival in 2015, 2016 or 2017, many other persons and entities (including, but not limited to,

3

Enlighten, owned by Justin Chamberlain, and Turnip the Beet, owned (on information and belief) by Jon Wilson and his partner Brandy) sold such unofficial, unlicensed pins at the Festival during those years, competing with Sloth and the many other sellers of unofficial, unlicensed pins at the Festival. Thus, the exclusivity Sloth did have as a result of its Agreement with Electric Forest to sell the official, licensed Electric Forest Festival pins did not impair, impede or discourage Enlighten or Sloth's many other competitors from selling unofficial, unlicensed pins at the Festival.

Accordingly, when Electric Forest texted Mr. Chamberlain to advise him that Sloth had "confirmed an exclusive agreement for selling pins" and "upgraded [its] sponsor arrangement to ensure exclusivity" and, as a result, Electric Forest "understand[s] this may affect [Enlighten's] sales and/or interest in participating at [Electric Forest]," this was a reference not to the existing Agreement between Sloth and Electric Forest at all, for even during the existence of that Agreement (which only gave Sloth an exclusive right to sell official, licensed Electric Forest pins), Enlighten was permitted to, and did, sell its unofficial, unlicensed pins at the Festival. Rather, this statement was about Sloth, not the Agreement, and some undefined action Sloth supposedly took to "ensure exclusivity" that would prevent Enlighten from selling any pins at the next year's Festival.

Defendants admitted that their statements were false less than two weeks after they made them, retracting them in emails to Mr. Chamberlain and Mr. Wilson "regarding pin exclusivity" that admitted that "[t]he decision to take on an exclusive pin vendor for the Festival was made solely by festival management. This was not directed by any vendor or sponsor." (Complaint, ¶31). Defendants claimed in this email that the prior statements about Sloth having confirmed and

exclusive agreement for selling pins at the Festival and having upgraded its sponsor arrangement to ensure exclusivity were a "miscommunication." (*Id*.).

Plaintiffs' Complaint alleges in each count that Defendants' statements were not only false and defamatory and (as Defendants themselves admitted in their retraction email) known by them to be false when they were made (*see* Complaint, ¶¶71, 86, 98)) but, because they were made with reckless disregard for Sloth's interests and reputation, were made with actual malice. (Complaint, ¶¶83, 95, 106).

Plaintiff filed this action for defamation and false light in the Circuit Court of Cook County, Illinois within one year of the publication of the false, defamatory statements. Plaintiffs alleged that all the Defendants are non-residents of Illinois because all were and are foreign business entities that were and are not authorized to do business in Illinois. (Complaint, ¶7). Thus, venue was and is proper in Cook County because, pursuant to Section 2-101 of the Illinois Code of Civil Procedure, "if all Defendants are nonresidents of the State, an action may be commenced in any county." 735 ILCS 5/2-101. The Complaint so alleged. (*Id*.)

Defendants timely removed the case to this Court. [DE #1]. This Motion followed.

## LEGAL STANDARDS APPLICABLE TO VENUE MOTIONS

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), ***all allegations are taken as true***, unless contradicted by the Defendant's affidavits and the court may consider facts outside the pleadings. *Allstate Life Insurance Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015) (emphasis added).

Under either Illinois or California law, a plaintiff's choice of forum is entitled to great deference. *See, e.g.*, *Schuster v. Richards*, 2018 IL App (1st) 171558, ¶21 ("[t]he plaintiff has a substantial interest in choosing the forum, and generally, [its] choice 'should rarely be disturbed;'"

5

"in most instances, the plaintiff's initial choice of forum will prevail") and *Ford Motor Company v. Insurance Company of America*, 41 Cal. Rptr. 2d 342, 35 Cal. App. 4th 604, 610 (Cal. Ct. App. 1995) ("the plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident").[2]

Other relevant (or, in the case of Defendants' cited cases, irrelevant, distinguishable) case law will be discussed in Plaintiffs' Argument.

## ARGUMENT

1.  **Defendants Have Admitted the Falsity of Their Statements and Retracted the Statements, Thus Contradicting and Undermining Their Position in the Motion.**

Defendants' Motion is based on a singular premise, succinctly described in the Motion:

> Whether the communication was true or substantially true (an affirmative defense to Plaintiffs' claims) depends on the interpretation of the Sponsorship Agreement as amended. Therefore, the dispute arose out of and is related to the Sponsorship Agreement.

(Motion, p. 6). Unfortunately for Defendants, they have already admitted that this is not true, so their Motion must be denied. The indisputable fact is, only days after disseminating the false, defamatory statements about Sloth and its owner, Mr. Russell, Defendants sent an email to the very people to whom they made the false, defamatory statements admitting that what they had previously stated was not true, retracting the statements[3] and correcting the record "regarding festival pin exclusivity." (Complaint, ¶31; *see also* Complaint, Exhibits A and B). Whereas originally, Defendants stated in a text message that ***Sloth*** (already a vendor and sponsor of the

---

[2]  Here, of course, Mr. Russell, one of the Plaintiffs, is a resident of Illinois.

[3]  Indeed, when the parties appeared before the Court for the presentation of the Motion, the Court immediately wondered aloud how the Agreement was implicated here at all in the face of Defendants' admission and retraction.

Festival) *had "upgraded* their sponsor arrangement to ensure exclusivity" (Complaint, ¶25), in their email, Defendants admitted that "[t]he decision to take on an exclusive pin vendor *was made solely by festival management. This was not directed by any vendor or sponsor*."[4] (Complaint, ¶¶31, 32; *see also* Complaint, Exhibits A and B (emphasis added)). So, as Defendants admitted in this email, *Sloth had not*, as Defendants represented it did in the texts to Sloth's competitors, *done anything* with respect to, much less "upgraded," their "sponsor arrangement," nor had Sloth confirmed any agreement, for the Agreement had been in existence for well over a year. Moreover, Defendants' statements in the text message, false though they are, do not even mention the Agreement at all or any specific provision therein. Defendants' non-specific mention of Sloth's "exclusive agreement for selling pins" in no way identified the actual Sponsorship Agreement that Sloth had with Electric Forest, nor did it identify any of the rights or obligations of the parties under that Agreement. To the contrary, inasmuch as Defendants' statements in the text message made no mention of exclusivity for official, licensed Electric Forest pins – the only exclusive Sloth had ever had, which was known by Sloth's competitors during the previous years (*see* Complaint, ¶35, referring to one of the Facebook comments made after the defamatory statement has been published to Facebook – "You guys already said you were the official EF pin drops but that wasn't enough? You bought the rights to monopoly [sic] other pin vendor/families") – but referred more

---

[4] Not only did Defendants admit and correct their clear earlier falsehood about Sloth in this email, they went even further, providing specific reasons why they (that is, Defendants) made the decision they did with regard to exclusivity. They stated:

    1) *EF management* chose to do this for the following reasons:
       a) *We* have experienced problems with vendors selling unlicensed festival pins and artist pins, which causes legal issues
       b) *We* want a generally more diverse marketplace on site

(Complaint, Exhibit A) (emphasis added).

generally to "upgrad[ing]" the "sponsorship arrangement to ensure exclusivity," the year-old Agreement, which was the ***only*** agreement between Sloth and Electric Forest at that time, was not and could not have been the subject of the text message.

As if Defendants' own admissions that their statements about Sloth in the text messages were untrue were not enough, and it is, the Complaint – which must be taken as true in deciding a Rule 12(b)(3) motion to dismiss (*Allstate*, 80 F. Supp. 3d 870, 875) – alleged that neither Sloth nor Mr. Russell were consulted by Defendants in connection with Defendants' decision "regarding festival pin exclusivity" (Complaint, ¶21), played any role whatsoever in Defendants' decision (Complaint, ¶22) or took any action to influence or otherwise induce Defendants to make the decision they made (*Id.*). Likewise, Sloth played no role whatsoever in Defendants' decision to make Sloth the exclusive vendor for all collectible pins at the Festival (Complaint, ¶¶23, 24), nor did it take any action to influence or otherwise induce Defendants to make that decision (*Id.*).

Contrary to their argument in their Motion, then, no "interpretation of the Agreement" is even called for, much less required, in order to determine if what Defendants stated in the text message was false. It plainly was, and they admitted as much in their email.[5] Thus, neither the Agreement nor the forum selection clause contained therein are relevant to the causes of action alleged in the Complaint and accordingly, the Motion based on the forum selection clause must be denied.

---

[5] The fact that Defendants self-servingly characterized the false, defamatory statements about Sloth in the text message as a "miscommunication" in their attempted (but ultimately unsuccessful) face-saving email (*see* Complaint, Exhibits A and B) cannot and does change what were clearly and admittedly false statements about Sloth, which Defendants disseminated to Sloth's competitors, who then quite foreseeably – and irrevocably – disseminated the statements to the world via social media.

2.    **The Motion is Not Supported by the Distinguishable Cases Cited Therein, and Ignores Relevant, Applicable Cases.**

    A.    **California Law Does Not Support the Result Defendants Seek.**

As noted above, despite the fact that Defendants' statements in the false, defamatory text message do not mention: (1) the Agreement; (2) any specific provisions within the Agreement; or (3) the parties' conduct, rights or obligations under the Agreement, Defendants assert – without factual support or analysis – that the dispute here "arose out of and is related to the . . . Agreement" (Memorandum of Law in Support of Motion [DE #11], p. 6). This very sort of bare, conclusory statement has been *rejected in the context of a motion to dismiss for improper venue*. Thus, in *Welenco, Inc. v. Corbell*, No. S-13-0287 KJM CKD, 2013 WL 5423100 (E.D. Cal. Sept. 26, 2013), the court held, in denying defendant's motion:

> although [defendant] argues broadly that all the [tort] claims either arise out of the contracts or require interpretation of the contracts, he does not tie any of plaintiffs' claims to a particular contract out of the six involved in the sale . . . , or point to a particular provision in any of the contracts at issue. *His generalities are insufficient for him to prevail on this point. See Sims v. Paramount Gold & Silver Corp.,* No. CV 10–356–PHX–MHM, 2010 WL 5364783, at \*7 (D.Ariz. Dec.21, 2010) (stating that 'a defendant should not be able to defeat a plaintiff's otherwise legitimate choice of venue merely by alleging that the plaintiff's non-contractual claims require interpretation of the contract').

2013 WL 5423100, at \*7 (emphasis added). *Welenco* and its analysis above were cited with approval in *GemCap Lending I, LLC v. Bateman*, No. CV17-3305 PSG GJSx, 2017 WL 8183191 (C.D. Cal. July 17, 2017), a case that, while procedurally very different from this case[6], is otherwise virtually on all fours.

---

[6]  Unlike here, in *GemCap* it was plaintiff who asserted the applicability of the forum selection clause and defendant who denied it. In addition, while here defendants have only moved to dismiss, in *GemCap* defendant moved to dismiss or, in the alternative, to transfer venue on the basis of forum *non conveniens.*

In *GemCap*, Defendant obtained financing from the Plaintiff lender pursuant to numerous agreements. After Defendant failed to repay the money due under the agreements, Plaintiff filed suit in Los Angeles County Superior Court alleging that Defendant had defamed Plaintiff in the media. 2017 WL 8183191, at *2. The financing contracts contained a forum selection clause that required that "any suit, action or proceeding arising out of this agreement, the other loan documents, the obligations and/or the collateral or any matter arising therefrom or relating thereto" be filed in Los Angeles County. *Id*. at *4. Defendant moved to dismiss for improper venue, claiming both that the forum selection clause did not apply to him and that venue in Los Angeles County was otherwise improper. Defendant also moved, in the alternative, to transfer venue on the ground of forum *non conveniens*.

Although the court initially noted that "forum selection clauses can be equally applicable to contractual and tort causes of action," it cited to the Ninth Circuit test for determining whether a forum selection clause is applicable to a tort claim, which "requires the court to consider whether resolution of the claims relates to interpretation of the contract." *Id*. (citations and internal quotation marks omitted). Turning to the facts of the case, the court held:

> [Defendant]'s statements that [Plaintiff] is a 'predatory rogue lender" that was 'trying to hijack the company,' and that Plaintiffs were 'nasty and dirty' require no interpretation of the terms of the loan agreements, which the parties do not dispute. Even the statements that Plaintiffs 'fabricated the default that triggered the foreclosure sale' and 'had been cheating' require no examination of the underlying loan terms because no party disputes that money was owed or that the parties had certain rights and obligations under the loan agreements; rather, the statements have bearing on Plaintiffs' accounting practices and behavior outside of the terms of the contract.

*Id*. The court continued:

> Notably, Plaintiffs do not address the Ninth Circuit standard in their opposition. Plaintiffs dedicate a mere paragraph to this question,

broadly postulating that forum selection clauses can apply to tort causes of action, but otherwise present no argument on how resolution of their tort claims requires interpreting the loan agreements, and much less point to any specific provisions at issue. *See, e.g., Welenco, Inc. v. Corbell*, CV 13-0287 KJM CKD, 2013 WL 5423100, at *7 (E.D. Cal. Sept. 26, 2013) (refusing to enforce forum selection clause where moving party broadly argued that all the claims either arise out of the contracts or require interpretation of the contracts, but "did not tie any of Plaintiffs' claims to a particular contract ...or point to a particular provision in any of the contracts at issue.").

*Id*. at *5. The court concluded:

The Court therefore agrees with [Defendant] that, although his statements arise from the events that followed the alleged default on the loan agreements by the [Defendant-owned], the terms of the loan agreements as well as the parties' rights and obligations under those agreements are not disputed, and do not require interpretation in order to resolve the defamation suit at issue. *See Johnson v. Mazza*, CV 15-09183 ODW AS, Dkt. # 66 (C.D. Cal. July 5, 2016) (finding forum selection clause inapplicable to Plaintiff's fraud-based claims because the claims "focused solely on the circumstances surrounding the formation of the contract rather than the interpretation of it."); *see also Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946, 948–49 (D. Utah 1985) (holding that where the alleged tortious acts are "unrelated to the interpretation" of the agreement, the forum selection clause does not apply because the parties would not have contemplated that their actions would be governed by the forum selection clause). The forum selection clause is therefore inapplicable in this case.

*Id*.[7]

Interestingly, like Defendants here, the *GemCap* Plaintiffs cited *Joseph v. Amazon.Com, Inc.*, No, C12-06256 HRL, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013), a case where the court

---

[7]  While Plaintiffs are cognizant of the Court's disdain for long block quotations from case law, because the facts in *GemCap*, including the failure of the party asserting the applicability of the forum selection clause to provide any analysis of the relevant case law or the facts of the cases cited, so closely mirror those here, citing to lengthy passages from *GemCap* seemed the most appropriate way to highlight the substantial similarities between the cases and the depth of the court's analysis there.

applied a forum selection clause to defamation claims "because the claims were 'connected to the rights and duties set out in the parties' agreement and resolution of the claim therefore necessarily involved interpretation of the agreement." *Id*. *citing Joseph*, 2013 WL 4806462, at *4. But, also like Defendants here, the *GemCap* Plaintiffs "ma[de] no analogy to the present facts." *Id*. As a result, the court in *GemCap* was "unconvinced that [Plaintiffs'] tort claims necessarily depend on interpretation of the underlying loan agreements." As in *GemCap*, and particularly in light of Defendants' admissions of the falsity of their statements, their retraction and their explanation as to why the decision as to exclusivity was their own and not Sloth's (though that is by no means the only reason), Defendants' false statements that form the basis of the Complaint "require no interpretation of the terms of the . . . [A]greement[ ], which the parties do not dispute." Thus, just as the motion to dismiss in *GemCap* was denied, so should Defendants' Motion here.

Furthermore, in citing *Joseph* here, Defendants (who provide no analysis of *Joseph*'s facts or holding in their Motion, but merely summarize the result in a single parenthetical sentence following the citation) fail to note a critical difference between the forum selection provision in *Joseph* and the one here, a distinction that, at least in part, formed the basis for the ruling in *Joseph*. In *Joseph*, unlike here, in addition to the usual language requiring disputes "relating to th[e] Agreement" or "transactions or activities under th[e] Agreement" to be brought in the selected forum, the provision also required that disputes relating to "[plaintiff's] relationship with [defendant]" be brought in the selected forum. *Joseph*, 2013 WL 4806462, at *3. The court in *Joseph* singled out this particular clause not once but twice (the second time even adding italics to the language for emphasis) in highlighting the breadth of the provision and finding that the defamation claims there were subject to the provision. Id. at *4.

12

Using the Ninth Circuit test articulated in *GemCap*, it scarcely requires argument to conclude that – even apart from Defendants' clear admission in their subsequent email of the falsity of their statements in the earlier texts and their retraction in the email of those statements – the statements themselves simply did not relate to the parties' rights, obligations or conduct under the Agreement. To the contrary, the statements pertained merely to acts that Defendants' claimed Sloth performed ("confirmed an exclusive agreement," "upgrading their sponsorship arrangement") ***that Sloth never performed***. There was never any new "exclusive agreement," the only agreement as of the date the text was sent being the Agreement that had been in place since 2016, and under which Defendants permitted competition in the sale of unofficial, unlicensed pins at the 2017 Festival. And, at the risk of repetition, Sloth did not upgrade anything; ***Defendants unilaterally made the decision to make Sloth the exclusive seller of all pins at the Festival***. So, contrary to what Defendants argued in their Motion, there is no need to examine the Agreement to determine the falsity of the statements, or any other element of Plaintiffs' causes of action. Accordingly, factually, this case could not be more different from *Joseph* or the other California cases cited (but not otherwise analyzed) in support of the Motion.

**B.    Illinois Law Does Not Support the Result Defendants Seek.**

Albeit for a completely different reason, Defendants fare no better under Illinois law. In *Krasinski v. United Parcel Service, Inc.*, 155 Ill. App. 3d 831 (3d Dist. 1987) – admittedly not a case involving a forum selection clause, but in which the court discussed how Illinois views defamation claims – plaintiff sued defendant for defamation for statements made by defendant's employees about plaintiff during the course of an internal theft investigation. The trial court granted summary judgment to defendant, holding that plaintiff's claim was preempted by Federal Labor Law because of the existence of a collective bargaining agreement between plaintiff and

defendant that prescribed the procedures for investigations of workplace misconduct such as the one in which plaintiff alleged the defamatory statements were made. The Appellate Court reversed. It held:

> Illinois state law . . . gives each and every one of its citizens the right to not be maliciously defamed by others regardless of whether that person is an employee subject to a collective-bargaining agreement. A cause of action for malicious defamation exists independently of the collective-bargaining agreement.

155 Ill. App. 3d at 840.[8] Thus, where there is a right rooted in and stemming from public policy, claims to protect and enforce such right are, as a matter of law, not dependent on interpretation of contracts. *Krasinski* was cited with approval in another case, *Brazinski v. Transport Service Co.*, 159 Ill. App. 3d 1061 (1st Dist. 1987), in which the Appellate Court similarly held that a tort claim of retaliatory discharge was clearly based on public policy and therefore was not dependent upon interpretation of a collective bargaining agreement. 159 Ill. App. 3d at 1066. The *Krasinski* Appellate Court decision was also affirmed by the Illinois Supreme Court, *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483 (1988). In its decision, the Supreme Court cited to two U.S. Supreme Court decisions, *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), in which the Court held that the resolution of an Illinois state law retaliatory discharge claim is independent of (and thus not preempted by) a collective-bargaining agreement because such resolution does not require construing the collective-bargaining agreement, and *Mays v. Reynolds Metals Co.*, 486 U.S. 1050 (1988), in which the Court, in light of its decision in *Lingle*, vacated an Alabama Supreme Court's judgment that a state law defamation claim was preempted by a CBA.

---

[8] The court was careful to point out one important limitation in its holding. It specifically noted that in order to defeat preemption, a defamation claim must allege that the statements were made with actual malice. *Id*. Here, of course, Plaintiffs have alleged such actual malice. (Complaint, ¶¶83, 95, 106).

14

Thus, from two distinct perspectives, neither Illinois law nor California law support Defendants' conclusory, analysis-free Motion, which wholly ignores Defendants' own clear admissions that their statements in the text were false. Whether this Court determines the Motion with reference to California law using the Ninth Circuit test described in *GemCap* or Illinois law and its clear and definitive recognition of the fundamental right of a plaintiff alleging malicious defamation to maintain its claim without reference to contract rights or provisions, or both, the result is the same: the Agreement between Sloth and Electric Forest does not apply to this action, the forum selection clause contained in the Agreement is therefore irrelevant and Defendants' Motion must be denied.

## CONCLUSION

For each and all of the foregoing reasons, Plaintiffs, ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY and NATHAN RUSSELL, respectfully pray that the Court enter an Order denying Defendants' Rule 12(b)(3) Motion to Dismiss for Improper Venue, and entering any other or further relief this Honorable Court deems necessary, just and proper.

ROOTS ROCK RAGE, LLC
d/b/a SLOTH STEADY
NATHAN RUSSELL


By:  /s/  Richard K. Hellerman
One of Their Attorneys

Richard K. Hellerman (6196915)
The Law Office of Richard K. Hellerman, P.C. (*of counsel*)
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
(312) 775-3646
(312) 648-1212 (fax)
rkhellerman@hellermanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to:

Floyd A. Mandell
Julia L. Mazur
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
 *floyd.mandell@kattenlaw.com*
 *julia.mazur@kattenlaw.com*

 /s/ Richard K. Hellerman
Richard K. Hellerman